## HOUGH v. STATE.

(Supreme Court, Appellate Division, Third Department. June 28, 1911.)

1. EVIDENCE (§ 397*)—PAROL EVIDENCE—VARYING CONTRACTS.

A contract, employing an expert witness for the state to appraise property in litigation, evidenced by a letter by the expert reciting that he will serve as an expert on the basis of a specified compensation, and which fixes the time of payment thereof, and by a letter on behalf of the Attorney General which recites that the letter of the expert states the conditions of the employment and is satisfactory, is a complete contract reduced to writing, and parol evidence of the agreement that the expert will testify to an appraisal substantially less than the appraisal of another expert is inadmissible as contradicting the written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756–1765; Dec. Dig. § 397.*]

2. CONTRACTS (§ 129*)—VALIDITY—PUBLIC POLICY — EXPERT WITNESS—EMPLOYMENT—COMPENSATION.

An agreement by an expert witness, employed by the state to appraise property involved in litigation, that his estimate shall be substantially less than the estimate of an expert of the adverse party, is contrary to public policy as tending to induce perjury, and is not enforceable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 616–618; Dec. Dig. § 129.*]

3. CONTRACTS (§ 141*)—VALIDITY—EMPLOYMENT OF WITNESS—EVIDENCE.

Evidence *held* to sustain a finding that an expert, employed by the state to appraise property in litigation, did not agree to make an estimate substantially less than the estimate of an expert of the adverse party, though the contract of employment was made on the assumption that his appraisal would be substantially less.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 141.*]

4. WITNESSES (§ 28*)—CONTRACTS—EMPLOYMENT—FRAUD.

An expert witness, who fraudulently represents *to a party to a suit* his ability to testify to an appraisal of property in litigation substantially less than the estimate of an expert of the adverse party with intent to deceive the party and obtain a contract of employment *to testify*

as an expert, is guilty of such fraud as will defeat an action by him under the contract of employment thus obtained.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 28.*]

5. WITNESSES (§ 28*)—CONTRACTS—EMPLOYMENT—FRAUD.

Where a witness in good faith stated to a party to a pending litigation that his appraisal of property in controversy would be substantially less than an estimate of an expert of the adverse party, and he was employed by the party to investigate and ascertain the value of the property and to testify as an expert and answer fairly such questions as might be asked him with reference to the value of the property, he could recover the compensation agreed on, though his estimate was not substantially less than the estimate of the other expert, and though he was not called as a witness.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 28.*]

6. APPEAL AND ERROR (§ 931*)—DISPOSITION OF CASE ON APPEAL—FINDINGS.

Where, in an action by an expert employed by a party to a pending litigation to appraise property in controversy and testify, the trial court made no specific finding that the expert offered himself as a willing and fair witness in behalf of the party, and it appeared that he did not testify, the court on appeal could not presume such finding to increase the amount of the judgment for the expert so as to include compensation prescribed for testifying.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 931.*]

Appeal from Court of Claims.

Action by David L. Hough against the State of New York. From a judgment of the Court of Claims (68 Misc. Rep. 26, 124 N. Y. Supp. 878) granting insufficient relief, claimant appeals. Reversed and remanded on law and facts, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

L. Laflin Kellogg, for appellant.

Thomas Carmody, Atty. Gen. (Joseph A. Kellogg, of counsel), for the State.

SMITH, P. J. The claimant challenges the judgment for insufficiency. In 1906 the state was in litigation with the Consolidated Gas Company to test the validity of the so-called 80-cent gas law. In that litigation the value of the plant and equipment of the Consolidated Gas Company became an important factor. One Mayer had testified in behalf of the Consolidated Gas Company that their plant and equipment was of the value of $16,098,893. The state through its counsel was endeavoring to prove that this estimate was excessive. This claimant was asked to be an expert witness in behalf of the state, and, after some negotiations between him and the attorneys representing the state, the following letter was written by claimant to the Deputy Attorney General:

"Oct. 6, 1906.

"Messrs. Kirby & Wood, Hon. Gustavus T. Kirby, 2 Wall St., City of New York—Dear Sir: As a memorandum of our understanding; I am to serve you as one of the state's expert witnesses in appraisal of the Consolidated Gas Company's plant and properties other than real estate, and be prepared to answer such other questions as my knowledge may permit; on the basis of a retainer of one thousand dollars ($1,000), and fifty dollars ($50) per day

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for services while engaged upon the work of examining, appraising, consulting and testifying; it being understood that the minimum days to be charged shall be ten (10). In addition to the above, I am to be reimbursed for any expenses to which I may be put. The terms of payment to be $1,000 down, and the remainder at such time as may be convenient; naturally, with the understanding that I may collect as against the state should the Legislature fail to pass the necessary appropriation. Will you kindly deliver to bearer the package of testimony that I am to take with me to-day?

"Very truly yours, D. L. Hough.
"DLH-R."

To this letter the following reply was sent:

"2 Wall Street, New York City, October 8th, 1906.

"D. L. Hough, Esq., 32 East 33rd St., New York City—Dear Sir: In reply to your communication of Oct. 6th, I have to say in behalf of the Attorney General of the State of New York that the terms and conditions set down therein are in accordance with my understanding and are satisfactory. There is some little formality to be gone through with before the $1,000 is paid down; but as soon as you return I will put the necessary vouchers to be signed before you, and the amount should be forthcoming within a few days thereafter.

"Very truly yours, Gustavus T. Kirby."

Thereafter the claimant made inspection and appraisal of the gas plant and presented his figures to the Deputy Attorney General. His appraisal amounted to the sum of $14,359,827, being, $1,749,066 less than the appraisal of Mayer, the witness for the Consolidated Gas Company. This appraisal was not satisfactory to the Deputy Attorney General, and the claimant was not called as an expert witness upon the trial. After the trial he presented his bill for payment, which was rejected. He thereafter brought action in the Court of Claims, which gave to him a judgment for the $350 expended and for the $1,000 retainer fee, but denied to him any compensation for the days which he had expended in making the appraisal and in consultation with the Deputy Attorney General.

This judgment was rendered upon the finding of fact that these letters did not constitute the full contract between the claimant and the Deputy Attorney General, but were simply memoranda confirmatory of an oral contract theretofore entered into between them, which oral contract, however, contained the additional stipulation that the claimant would testify to an appraisal substantially less than the appraisal of Mayer, the expert for the Consolidated Gas Company. This finding of fact is challenged by the claimant as against the weight of evidence, and the claimant further contends that evidence thereof was improperly admitted over his objection, on the ground that it tended to vary and contradict the written contract made between the parties.

[1] The admissibility of this evidence, as tending to vary a written contract, is not perfectly clear. The letters indicate that an agreement had been theretofore reached between the parties, which had not been reduced to writing. The agreement as expressed in the letters would seem to me to be complete. The stipulation added by the oral evidence is inconsistent therewith, as adding a condition to the claimant's right of compensation which is not included in the writings. The letter written by the claimant was evidently intended to make un-

equivocal his understanding of the agreement made. The response of the Attorney General is to the effect "that the terms and conditions set down therein are in accordance with my understanding and satisfactory." These letters would seem to me to evince an intention on the part of both parties to make their prior oral contract a written one, as defining the extent of the obligations incurred. It would seem to me a dangerous rule to allow a contract so evidenced to be changed and an important condition attached by evidence of an oral agreement theretofore made. In Perry v. Bates, 115 App. Div. 337, 100 N. Y. Supp. 881, it is held that:

"When letters written between contracting parties purport merely to confirm the terms of a prior oral agreement, the letters are not controlling as to the terms of the contract which may be shown by oral evidence which supplements or apparently contradicts the letters."

In that case, however, it does not appear that the terms stated in the letter therein questioned were assented to by the other party to the contract. It is probably unnecessary to determine this question in my view of the evidence in the case and the necessary inferences to be drawn therefrom.

[2] The court below has found that as part of the contract the claimant agreed that his estimate should be substantially less than the estimate of the expert for the Consolidated Gas Company. In view of this finding it is difficult to understand why any judgment whatever was given to the plaintiff. Such an agreement, without qualification, is to my mind clearly against public morals. The vice of the contract is not eliminated by any expressed or implied condition that the testimony shall be conscientiously given. Even with that condition the contract is clearly against public policy, as tending to induce perjured testimony. Any inducement offered to a witness to give certain testimony is subject to both legal and moral condemnation. If such a contract were actually made, it was a contract malum in se, which no court will enforce, and no moneys paid thereunder can be recovered. If such were the contract, the claimant clearly has a better judgment than he is entitled to and has no cause of complaint. [3] But the court will be slow to find such a pernicious stipulation in any contract, and especially in a contract made in behalf of the state by a duly accredited representative. Nor do I think that the evidence in the case justified this finding. The evidence makes it clear to my mind that there was no intention on the part of this claimant to agree in any contingency to give any certain evidence, or evidence of an appraisal substantially less than that given by the witness Mayer. Nor was his compensation to be dependent thereupon. Nor was it the intention of the Deputy Attorney General and his assistant to make that a condition of the contract. It was unquestionably talked over between the representatives of the state and this claimant what was sought to be proven by the state, and the purpose for which the evidence of the claimant was desired. I will assume that it was even discussed that his evidence would be valueless to the state unless his appraisal was at such a figure as to represent a difference of several cents in the cost production of a thousand feet of gas from such cost

production upon the basis of the appraisal of the witness Mayer. I will assume that the claimant took such data as were at hand and examined it, and after such examination stated that his appraisal would be substantially less than that of the witness Mayer. Upon that representation and assumption the contract was made, and a contract in exact accordance with that recited in the subsequent letters. When the letters are considered in connection with the conversations of the parties, as detailed upon the part both of the claimant and of the state, in view of the inherent probabilities of the case, this construction seems to me to be irresistibly forced upon us. [4] Under such a construction, if the claimant were dishonest, and fraudulently made the statement as to his ability to swear to an appraisal substantially less, with intent to deceive the Deputy Attorney General, he clearly has no right of action under a contract thus obtained. The statement was based, however, only upon partial data. [5] If he made such a statement in good faith, believing at the time and from the information which he then had that his appraisal would be substantially less than that of the witness Mayer, but thereafter upon further investigation and ascertainment of the actual facts found that he could not conscientiously make the appraisal at a lesser amount, he is nevertheless entitled to recover upon his contract for the full amount stipulated, *provided* he thereafter offered himself as a willing and reasonable witness, ready to answer fairly such questions as might be asked him in behalf of the state. This last qualification is made by reason of the claim of the Attorney General upon this argument that he did not offer himself finally as a fair witness in behalf of the state, because of his insistence that there should be included in the valuation the value of obsolete structures which were not in use. Upon this question the Court of Claims has made no finding. It may, however, become a material question if the claimant shall elect to take a new trial.

These views would lead to a reversal of the judgment of the Court of Claims, both upon the law and upon the facts. The claimant asks us to direct judgment for the full amount of his claim, as authorized by the findings actually made. If it should be held, however, that oral evidence were permitted to vary the contract, as expressed in the letters, the case must go back for retrial upon the question of fact as to the contract actually made. [6] If the rule as to the admission of this evidence be otherwise held, this court cannot increase the award without a specific finding to the effect that the claimant offered himself as a willing and fair witness in behalf of the state. While such a finding might be presumed for the purpose of sustaining the judgment already given, we are of the opinion that it cannot be presumed for the purpose of increasing the amount thereof.

The judgment should therefore be reversed on law and facts, and a new trial granted, with costs to the claimant to abide the event.

Judgment reversed on law and facts, and new trial granted, with costs to claimant to abide event. All concur; HOUGHTON, J., upon the ground that the letters contained an entire contract.